IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:04CV204

| | |
|---|---|
| NINA BELLE PRITCHARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | FINDINGS OF FACT AND |
| ) | CONCLUSIONS OF LAW |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiff Nina Belle Pritchard's suit for damages arising out of an accident involving United States Postal Service employee Raymond Edward Foster. The Court has jurisdiction of this matter pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and 28 U.S.C. §§ 2671, *et seq.*

The matter came before the Court for a nonjury trial on November 7, 2006. Having carefully considered the evidence presented at trial, the arguments of the parties, and the applicable authority, for the reasons stated below, the Court finds the United States liable for damages in the sum of $135,000.

## I. FINDINGS OF FACT

On Monday, March 10, 2003, rural postal carrier Raymond Edward Foster ("Foster") was delivering mail in Lenoir, North Carolina. Foster, driving a specially-equipped, right-hand drive 1992 Subaru Legacy, was a mail carrier and employee of the United States Postal Service, and was acting within the scope of his duties as a rural mail carrier on that morning.

Also on Monday, March 10, 2003, then 68 year old Plaintiff Nina Belle Pritchard

1

("Pritchard" or "Plaintiff"), residing at 1685 Greasy Creek Road, Lenoir, North Carolina, was caring for three young children. On the previous Saturday, a substitute mail carrier had mistakenly delivered a package to Pritchard's house. Upon discovering the mistakenly delivered package, Pritchard called the local post office, which informed her that she could return the package to her postal carrier the following Monday. Pritchard noted that the package contained medicine and was marked Priority Mail. She felt she should return it to the mail carrier so that it could be delivered to the proper person. As a result, on March 10, 2003, Pritchard was watching for Foster in order to give him the package.

Around 11:20 a.m., Foster pulled his car over to the side of the road to deliver mail to three mailboxes across the road from Pritchard's house. After Pritchard saw Foster pull his car over in front of these mailboxes, she told the children to sit down, picked up the mis-delivered package, and went out the front door. Pritchard walked across her yard and, after looking both ways to make sure a car was not coming, crossed the road toward Foster's car. While she was walking, Pritchard did not look at Foster but rather was looking down to make sure of where she was stepping. Pritchard heard a radio playing in Foster's car and did not tap on the car window or otherwise attempt to communicate with him before stepping in front of his car because she assumed he saw her given her build and the pace of her approach.

Pritchard intended to go to the right side of Foster's vehicle where he was seated to hand him the package. Pritchard did not attempt to go to Foster's left side window because that side of the vehicle was in the southbound lane of Greasy Creek Road and she was afraid of being hit by a car. Moreover, Pritchard did not go behind Foster's car because that route would have required her to walk around the backside of the mailboxes where the ground was uneven and

contained briars and brambles. According to Pritchard's judgment, walking around the front of Foster's car to reach the right side was the safest and most direct path for delivering the package to Foster.

As Pritchard got to the front of Foster's car, Foster, without looking in front of his vehicle, started to pull into the southbound lane of Greasy Creek Road by letting off the brake and pushing on the accelerator. Foster admitted that, as he took his foot off the brake, he was either looking down or glancing in his side view mirror. Before Pritchard could move out of the way, Foster's vehicle struck her, causing her to fall into the ditch adjacent to the mailboxes. Foster estimated that his vehicle moved two to three feet before striking Pritchard. The Court credits this testimony. As a result of the collision and fall, Pritchard suffered numerous injuries, including a broken arm and leg, which required surgery and hospitalization.

Pritchard and Foster were the only witnesses to the accident. The parties do not dispute the principal facts in the case, and disagree only as to whether the facts suggest that Foster was negligent, and whether Pritchard was contributorily negligent. Further, the parties do not dispute the principal facts regarding the treatment Pritchard received following the accident.

Immediately after the accident, Pritchard was transferred by Caldwell County Ambulance to Caldwell County Hospital, where she was examined and transferred again by Caldwell County Ambulance to Boone Orthopaedic Associates, P.A. where she was examined before finally being admitted to Watauga Medical Center in Boone, North Carolina. Pritchard spent a period of four days at Watauga Medical Center where she received treatment for a broken arm and broken leg. While at Watauga Medical Center, Pritchard underwent surgery for her broken leg that included the implantation of titanium to stabilize her knee.

3

Following Pritchard's treatment at Watauga Medical Center, she was transferred to Blowing Rock Assisted Living Center for rehabilitative care. Pritchard remained at Blowing Rock Assisted Living Center for six and a half weeks. She was unable to walk or move out of her bed without assistance during the early part of her stay. Upon returning home, Pritchard required the use of a walker for four months.

The parties stipulated before trial to a physician's estimate that Pritchard's arm fully recovered and her body remains 4% impaired and her leg 10% impaired as a result of the accident. [Second Set of Stipulations, Doc. #39]. The parties stipulated at trial that Plaintiff's total medical expenses were $29,376.17. The parties also stipulated that: "Plaintiff is not claiming either future medical expenses or lost income as part of the damages proximately caused by the accident." *Id*. Pritchard, who tolerates pain relatively well, nevertheless experienced pain, severe at times, from the time of the accident, particularly during rehabilitation. Pritchard still contends with pain from her injuries on a daily basis and is not able to lead as active a life as before the accident. Pritchard's family testified that her overall demeanor changed after the accident and that she is not as happy or cheerful as she once was.

## II. CONCLUSIONS OF LAW

The Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* provides that the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "Actions brought under this statute are governed by the substantive law of the state in which the alleged wrongful conduct occurred." *Reynolds v. United States*, 805 F. Supp. 336, 339 (W.D.N.C. 1992) (citing 28 U.S.C. § 1346(b); *Starns v. United States*, 923 F.2d 34 (4th Cir.); *cert. denied*, 502 U.S. 809, 112 S. Ct. 54, 116 L. Ed. 2d 31

(1991)). The alleged wrongful conduct here occurred in North Carolina. Accordingly, North Carolina law governs Plaintiff's lawsuit.

### a. Foster's negligence

Under North Carolina law, in order to establish a claim for negligence, a plaintiff must show by a preponderance of the evidence that defendant owed her a duty of care, defendant's conduct breached that duty, the breach was the actual and proximate cause of plaintiff's injury, and damages resulted from the injury. *Reynolds*, 805 F. Supp. at 340; *Southerland v. Kapp*, 59 N.C. App. 94, 95, 295 S.E.2d 602, 602 (1982) (citing *Coltraine v. Hospital*, 35 N.C. App. 755, 757-58, 242 S.E.2d 538, 540 (1978)).

Plaintiff contends that Foster violated both his statutory and common law duty to detect Plaintiff's presence and to avoid running over her when he failed to keep a proper lookout before moving his vehicle and by failing to sound his horn as a warning to Plaintiff.

North Carolina General Statute Section 20-154(a) provides:

> The driver of any vehicle upon a highway or public vehicular area before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn. . . .

However, the statute further provides that a violation of this section "shall not constitute negligence per se." N.C. GEN. STAT. § 20-154(d).

The Supreme Court of North Carolina has stated, however:

> Even in the absence of statutory requirements...: '[I]t is the general rule of law that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway.

> This duty also requires that the operator must be reasonably vigilant, and that he must anticipate and expect the presence of others.' *Adams v. Beaty Service Co.*, 237 N.C. 136, 141, 74 S.E.2d 332, 336. It is the duty of a driver not merely to look but to keep a lookout in the direction of travel; 'and he is held to the duty of seeing what he ought to have seen.' *Wall v. Bain*, 222 N.C. 375, 379, 23 S.E.2d 330, 333.

*Bowen v. Gardner*, 275 N.C. 363, 367, 168 S.E.2d 47, 50-51 (1969).

In assessing Foster's negligence, the Court finds significant Foster's admission that he failed to look forward before releasing the break and pressing the accelerator. Although Foster's failure to look forward before traveling is not negligence *per se* under North Carolina General Statute Section 20-154(d), as trier-of-fact, the Court may consider such failure along with other relevant facts to determine whether he violated his common-law duty of care. *Blankley v. Martin*, 101 N.C. App. 175, 180, 398 S.E.2d 606, 609 (1990); *Sharpe v. Grindstaff*, 329 F.Supp. 405, 408 (M.D.N.C. 1970) (citing *Kinney v. Goley*, 4 N.C. App. 325, 167 S.E.2d 97 (1969)). The Court acknowledges that the circumstances of this case are somewhat unique, in that Foster was driving a specially-equipped, right-hand drive car and was involved in the delivery of mail to roadside mailboxes immediately prior to the accident. However, these unique circumstances did not absolve Foster from his general duty to make certain that he could travel safely without colliding with persons or objects in his line of travel. *Bowen*, 275 N.C. at 367, 168 S.E.2d at 50-51.

This Court finds that Foster breached his duty of care to Plaintiff as a pedestrian by failing to look forward before moving his vehicle. Foster's breach led to the ensuing collision of Foster's car with Plaintiff, and his negligent actions were the actual and proximate cause of Plaintiff's injuries. Such injuries resulted in damages to Plaintiff as assessed below.

### b. Contributory negligence

Even if a plaintiff is able to establish a claim of negligence, it is well-settled in North Carolina that such claim will be barred if the plaintiff failed to exercise ordinary care for her own safety and that failure contributed to her injury. *Hicks v. Food Lion, Inc.*, 94 N.C. App. 85, 90, 379 S.E.2d 677, 680 (1989) (citing *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E.2d 504 (1980)). The standard for contributory negligence is an objective one - the care an ordinarily prudent person would have exercised under the same or similar conditions to avoid injury. *Culler v. Hamlett*, 148 N.C. App. 372, 377, 559 S.E.2d 195, 200 (2002). The burden of proving the plaintiff's contributory negligence lies with the defendant. *Blankley*, 101 N.C. App. at 178, 398 S.E.2d at 608.

Here, Defendant argues that Plaintiff was contributorily negligent by crossing in front of Foster's vehicle without notifying him of her presence or taking a less dangerous route to deliver the package. The Plaintiff made a number of precautionary decisions when she approached Foster's vehicle. Before crossing the road to reach the vehicle, Plaintiff looked both ways. Plaintiff decided not to approach the port, or lefthand, side of the vehicle because that part of the vehicle extended into the traveled portion of the roadway where it was exposed to oncoming traffic. Plaintiff decided not to walk behind the vehicle and around the mailboxes because Plaintiff would have had to walk on uneven ground approached by brambles, and such a path was impractical given Plaintiff's age and build. Based on Foster's testimony that the vehicle traveled two to three feet before striking Plaintiff, Plaintiff left approximately two to three feet between herself and the vehicle when she crossed in front of it. Plaintiff made reasonable assumptions that Foster would look forward before putting the vehicle in motion, and that if Foster had looked

forward, he would have seen Plaintiff.

The preponderance of evidence in this case indicates that Plaintiff exercised reasonable care in approaching Foster's vehicle. Thus, the Court finds that Plaintiff was not contributorily negligent. The Court does not reach the issue of whether Foster's conduct met the requirements for the last clear chance exception to contributory negligence since such finding would only be relevant if the Court found Plaintiff contributorily negligent.

    **c.**    **Damages**

As stated in the Court's Findings of Fact above, the parties stipulated at trial that Plaintiff's total medical expenses were $29,376.17. The parties further stipulated that: "Plaintiff is not claiming either future medical expenses or lost income as part of the damages proximately caused by the accident." [Second Set of Stipulations, Doc. #39]. Given the testimony and medical records received into evidence at trial, the Court awards Plaintiff a sum of $135,000 in total compensation for past medical expenses and pain and suffering, plus court costs.

## III. DECISION

**IT IS, THEREFORE, ORDERED** that the Plaintiff recover from the Defendant a sum of $135,000 plus applicable court costs.

**IT IS FURTHER ORDERED** that the Clerk of Court enter Final Judgment in favor of Plaintiff consistent with these Findings of Fact and Conclusions of Law.

Signed: December 22, 2006

Richard L. Voorhees
United States District Judge